James N. BOWEN, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant.

Betty G. BOWEN, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant.

No. 87–1235.

United States Court of Appeals, Fifth Circuit.

Feb. 5, 1988.

David M. Moore, Atty., Michael L. Paup, Chief, Appellate Section, Tax Div., U.S. Dept. of Justice, Roger M. Olsen, Asst. Atty. Gen., Richard Farber, Atty., Washington, D.C., for defendant-appellant.

El Link Beck, El Paso, Tex., for plaintiff-appellee.

Before GOLDBERG, POLITZ, and DAVIS, Circuit Judges.

POLITZ, Circuit Judge:

The Internal Revenue Service assessed a penalty against James N. Bowen and Betty G. Bowen for $253,100.59 under § 6672 of the Internal Revenue Code of 1954 [1] for the willful failure to account for and pay over to the government certain federal income and social security taxes withheld from the wages of the employees of Bowen Industries, Inc. during the fourth quarter of 1983. The Bowens paid a total of $1,446.54 in partial satisfaction of the assessment before filing the instant consolidated actions seeking refunds. The government counterclaimed for the unpaid balance. The case was tried to a jury. The court directed a verdict that the Bowens were responsible persons under the Internal Revenue Code, but submitted to the jury the question whether the Bowens' conduct was willful. The jury returned a verdict in favor of the Bowens. The court denied the government's motion for judgment *non obstante veredicto*, prompting this appeal. We reverse and remand for entry of an appropriate judgment.

At all pertinent times, the stock in Bowen Industries, Inc. was owned by James and Betty Bowen and their children. James Bowen was president with primary responsibility for the corporation's construction projects. Betty Bowen was vice-president and secretary-treasurer with primary responsibility for all office and clerical matters. The corporation functioned by and through the Bowens. Each had signing authority over all corporate bank accounts.

■ The employees of Bowen Industries were paid weekly. The Internal Revenue Code required the corporation-employer to withhold from each employee's wages the amount owed for federal income taxes and the employee's portion of FICA taxes. 26 U.S.C. §§ 3102, 3402. The corporation held these funds in trust for the United States. 26 U.S.C. § 7501(a); *Howard v. United States*, 711 F.2d 729 (5th Cir.1983). The withholding of taxes relieves the employee of any further responsibility for payment. The matter then involves only the government and the employer, including those responsible for relevant actions of the employer.

The taxes withheld must be reported at quarterly intervals, not later than the end of the month following each quarter. 26 C.F.R. §§ 31.6011(a)–1(a)(1); 31.6011(a)–

---

1. Under § 2 of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, the Internal Revenue Code of 1954 is redesignated the Internal Revenue Code of 1986. The period at issue in this case antedates the 1986 Act. Accordingly, references herein shall be to the Internal Revenue Code of 1954.

4(a)(1); 31.6071(a)–1(a)(1). Employers with the payroll level of Bowen Industries are required to deposit the taxes withheld within three banking days of the end of each quarter-monthly period. 26 C.F.R. § 31.6302(c)–1(a)(1)(ii)(b).

During the fourth quarter of 1983 Bowen Industries suffered a cash crunch. As a consequence it did not make the periodic deposits of the monies withheld for federal income and FICA taxes. Rather, these funds were used to meet payroll and to pay other corporate debts. On November 29, 1983, the Bowens met with a loan officer of the bank which handled the corporation's finances, and discussed their cash-flow difficulties. The corporation had sufficient funds to remit the tax payments, but could not do so and pay other corporate debts, including payroll. The corporation then had a substantial line of credit available from the bank. The Bowens and their accountant testified that the loan officer suggested that they forego taking an additional loan but, rather, defer making the tax deposits until receipt of an IRS demand after the filing of the quarterly return in January 1984. A loan at that time was assured.[2] The suggestion was bottomed on the fact that the penalties and interest resulting from the late tax remittal would be substantially less than the interest the bank would charge for lending that sum of money.[3]

The decision to delay remittal of the taxes was made. The following February the Bowens learned that the bank had terminated its line of credit. No more loans would be forthcoming, including a loan of funds needed to remit the taxes withheld during the fourth quarter of 1983. After learning of this credit termination by the bank, specifically during the first 15 days of March 1984, the corporation received payments exceeding $627,000, a sum obviously more than adequate to pay the tax deficiency. The sum was insufficient, however, to pay that deficiency, plus payroll, and the debts due other creditors. The Bowens opted to use the funds to pay other corporate obligations. The corporation subsequently initiated bankruptcy proceedings. The taxes have not been paid.

The record reflects no dispute of any material fact. The taxes withheld by Bowen Industries for the fourth quarter of 1983 were not paid over to the government. The Bowens had funds available when the payments were due, and thereafter, but made the conscious decision not to pay the taxes and to use the funds it held in trust to pay other corporate obligations. The Bowens made the United States "an unwilling joint venturer in the corporate enterprise." *Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir.1979).

■ The Bowens have maintained consistently that they had no bad motive or intent to deprive the government of the taxes. They insist that they would have paid the taxes when due but for the suggestion of the loan officer and the assurance that a loan would be forthcoming when the IRS made demand for the late taxes. We have no reason to reject this assertion of good faith by the Bowens. Legally, however, that good faith is irrelevant to the issue before the court.

The language of § 6672 expressly commands the resolution of this dispute. It provides in pertinent part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for

---

2. The loan officer denied telling the Bowens that the bank would loan the corporation the money needed to pay the taxes. From the verdict it appears that the jury credited the Bowens' testimony.

3. The Bowens' accountant explained the loan officer's suggestion in simple but compelling terms:

The rate that we would have to pay the bank would be substantially higher than the rate we would have to pay the IRS, including penalties and interest. And so [the loan officer] thought we would be better off to wait until we received notice from the Internal Revenue Service. The bank then would loan the money to pay the payroll taxes at that point in time. And make it a situation where the Bowens were incurring a lower cost of money. You know, in effect, borrowing it from the payroll taxes.

and pay over such tax ... shall ... be liable to a penalty equal to the total amount of the tax.

■ Section 6671 defines "person" to include "an officer or employee of a corporation ... under a duty" to collect, account for, and pay over the withheld tax. Such an officer or employee receives the cognomen "responsible person." Accordingly, a responsible person who willfully fails to collect, account for, or remit the withheld taxes becomes personally liable for same.

■ The trial court directed a verdict that the Bowens were responsible persons for Bowen Industries. The facts and the law fully support that finding and conclusion. The court declined to hold as a matter of law that the Bowens acted willfully, referring that issue to the jury. In this the court erred. Under the undisputed facts and the controlling law, the Bowens acted willfully.

In a continuing line of precedents we have held that as used in § 6672, willfully

> does not require a criminal or other bad motive on the part of the responsible person, but simply a voluntary, conscious and intentional failure to collect, truthfully account for, and pay over the taxes withheld from the employees.

*Newsome v. United States*, 431 F.2d 742, 745 (5th Cir.1970). Our precedents extend from *Gefen v. United States*, 400 F.2d 476, 482 n. 7 (5th Cir.1968) (" 'willful' ... does not require a finding of intent to defraud or to deprive the United States of taxes. It requires only that the choice to pay funds to other creditors instead of the government be made voluntarily, consciously, intentionally...."), to *Wood v. United States*, 808 F.2d 411, 415 (5th Cir.1987) ("A considered decision not to pay the taxes owed, evidenced by payments to other creditors with knowledge that withholding taxes are due, establishes willfulness."). Willfulness may also be evidenced by a responsible person proceeding with "a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government." *Brown v. United States*, 591 F.2d 1136, 1140 (5th Cir.1979).

■ The Bowens' actions were willful within the meaning of § 6672. They contend that they did not act willfully because they had a reasonable cause for not remitting the taxes, *viz*, the advice and assurance of the banker—apparently considered acceptable by the Bowens' accountant—that a loan would be forthcoming when the IRS made demand for payment. Although we have recognized conceptually that a reasonable cause may militate against a finding of willfulness, no taxpayer has yet carried that pail up the hill. *Mazo v. United States; Newsome v. United States*. The burden of proving lack of willfulness is on the taxpayer, *Mazo*, and the Bowens have not satisfied that burden. We have not accepted the mere reasonable expectation of sufficient funds at a later date as a defense to a charge of willful failure to comply with the commands of § 6672.

We make no issue of the trial court's refusal to grant the government a directed verdict. That declination is consistent with our repeated urgings that such rulings be reserved to judgment n.o.v. consideration. In the event the appellate court were to disagree with the trial court, the jury verdict could be reinstated and no new trial would be necessary. *McPhillamy v. Brown & Root, Inc.*, 810 F.2d 529 (5th Cir.1987); *Western Hills Bowling Center v. Hartford Fire Ins.Co.*, 412 F.2d 563 (5th Cir.1969). But when reviewing the matter post-verdict, the court should have granted the relief sought by the government.

The ruling on the motion for judgment *non obstante veredicto* is REVERSED; there is judgment herein in favor of the United States on the counterclaims, and the matter is REMANDED for entry of an appropriate judgment, entered either on this record, or pursuant to such supplementation thereof as the trial court may deem appropriate.

REVERSED and REMANDED.