United States Court of Appeals,

Fifth Circuit.

No. 91–5782.

Lawrence RABA, et al., Plaintiffs,

v.

UNITED STATES of America, Counter–Claimant–Appellee,

v.

Lawrence RABA, et al., Counter–Defendants,

Raymond Mirelez, Counter–Defendant–Appellant.

Nov. 23, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before GOLDBERG, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Raymond Mirelez appeals a judgment finding him liable for $122,281.45, less credits for payments, plus interest, pursuant to 26 U.S.C. § 6621(a)(2). The district court determined Mirelez was a responsible person, required to collect and pay over payroll taxes, who willfully failed to do so under *id.* § 6672. Finding no error, we affirm.

I.

Mirelez started to work for the predecessor corporation to Cerna, Raba & Partners (CRP) in 1984 as a bookkeeper. CRP was established to design and construct buildings. Lawrence Raba, David Cerna, and Sebastino Ochoa were the principal shareholders and officers of CRP from 1983 to 1991. Mirelez gradually assumed a more prominent role in CRP, becoming a Vice President on the Board of Directors in 1984 and Chief Financial Officer from 1984 until 1987. He grew to be, by his own admission, the single most important individual directing the business affairs of CRP.

Mirelez's duties were myriad. He prepared financial statements, drew up lists of accounts payable and accounts receivable, and oversaw the preparation of CRP's checks. He gave lists of bills to Cerna and Raba and suggested which ought to be paid. Cerna and Raba testified that they signed,

without question, checks Mirelez presented them.[1] Mirelez prepared the Internal Revenue Service (IRS) Forms 941 and payroll checks. Although Raba usually signed the tax forms, Mirelez signed them on occasion.

In the mid–1980's, while Cerna and Raba concentrated on CRP's daily architecture practice, Mirelez was left in control of CRP's financial dealings. The district court found that during 1985 and 1986, Mirelez had significant control over the disbursement of CRP funds. It found his control so great that he had the authority to determine on a daily basis which of CRP's creditors were to be paid.

One of Mirelez's favorite creditors was himself. Between 1980 and 1986, Mirelez lent CRP money. On June 5, 1985, he deposited $40,000 into CRP's corporate account; he was repaid $60,000. Between November 5, 1985, and February 3, 1986, Mirelez lent $100,000 to CRP. CRP repaid this loan in installments made to Mirelez between 1985 and September 2, 1987.

Mirelez also had more inventive ways of obtaining money from CRP: The district court found that he embezzled more than $350,000 from the company. In 1991, he pleaded guilty to nine counts of felony theft for misappropriating CRP checks.[2] In 1987, he altered the name of the payee on two checks, substituting his own name for that of CRP. He deposited the funds from these checks into his own account rather than paying them over to the IRS. Raba testified that but for the misappropriation of funds by Mirelez, CRP would have been able to repay all the withholding taxes it owed the IRS.

By 1985, Mirelez became aware that CRP consistently was delinquent in the payment of its payroll taxes. In early 1986, he told Cerna and Raba that IRS records showed that CRP's employment taxes were delinquent. Mirelez represented to Cerna and Raba that CRP did not actually owe any payroll taxes but that the taxes had been applied to the wrong employer identification number.

On October 31, 1988, and November 14, 1988, Cerna, Raba, and Mirelez were assessed a

---

[1]During this time period, Cerna, Raba, and Ochoa were the only CRP officers who had authority to sign checks on CRP's behalf. Mirelez never had check-signing authority.

[2]All of these counts related to activities before the time periods at issue here.

100% penalty for failure to pay over payroll taxes to the IRS, pursuant to section 6672, in the amount of $122,281.45. The quarters and amounts involved are as follows:

| Tax Period Ended | Amount |
| --- | --- |
| December 31, 1985 | $ 38,529.28 |
| April 30, 1986 | 59,799.35 |
| June 30, 1986 | 2,002.24 |
| December 31, 1986 | 21,950.58 |
| Total | $122,281.45 |

On February 13, 1989, Raba filed a complaint against the government seeking a refund of $797.75. The government filed an answer and counterclaim alleging, among other things, that Mirelez was a person responsible for CRP's unpaid employment taxes for the fourth quarter of 1985 and the first, second, and fourth quarters of 1986.[3]

In May 1991, the district court held a bench trial to determine whether Mirelez was a "responsible person" who had willfully failed to pay over withholding taxes under section 6672. The court concluded that Mirelez had violated the statute and on September 24, 1991, entered judgment in the government's favor.

II.

Title 26 U.S.C. §§ 3102 and 3402 require employers to withhold from employees' wages the amount owed by every employee for federal income taxes and social security contributions. The employer holds the funds in trust for the United States. *Howard v. United States,* 711 F.2d 729, 733 (5th Cir.1983). When a corporate employer does not pay over the withheld taxes, the government may impose a penalty under section 6672(a).[4] In order to be found liable under this section, a person

---

[3]The United States settled its claims against Raba and Cerna in 1991, each for $60,000, plus interest.

[4]Section 6672(a) reads as follows:

(a) General rule.—Any person required to collect, truthfully account for,

must be a "responsible person"[5] and must act "willfully" in not paying the withheld taxes. *Wood v. United States,* 808 F.2d 411, 414 (5th Cir.1987).

The district court found that Mirelez was a responsible person who willfully failed to pay over taxes to the United States under section 6672. We review these findings under a clearly erroneous standard. *Gustin v. United States,* 876 F.2d 485, 491 (5th Cir.1989).

A.

We generally take a "broad view of who qualifies as a responsible person." *Wood,* 808 F.2d at 415. *See also Turnbull v. United States,* 929 F.2d 173, 178 (5th Cir.1991); *Morgan v. United States,* 937 F.2d 281, 284 (5th Cir.1991); *Gustin,* 876 F.2d at 491. Determining whether an individual is a responsible person is a question of "status, duty and authority." *Howard,* 711 F.2d at 734. *See also Mazo v. United States,* 591 F.2d 1151 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). The crucial examination is whether a person had the "effective power to pay taxes." *Gustin,* 876 F.2d at 491. In other words, we look behind a person's official title or job description to determine whether he had the actual duty or ability to pay over the taxes owed.

In *Turnbull,* 929 F.2d at 179, we held that the former president of a corporation, whose employees still perceived of him as the "boss," and who retained authority to sign checks and negotiate with the IRS, was a responsible person under section 6672. We considered the following factors to determine responsible person status:

(1) holding an office or owning stock in the corporation;

(2) managing the day-to-day operations of the business;

and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

[5]In *Slodov v. United States,* 436 U.S. 238, 246 n. 7, 98 S.Ct. 1778, 1784 n. 7, 56 L.Ed.2d 251 (1978), the Court pointed out that cases decided under § 6672 generally refer to "the person required to collect, truthfully account for, and pay over any tax imposed by this title" by the phrase "responsible person." A responsible person is any person who performs any one of the three functions referred to above. *Id.* at 250, 98 S.Ct. at 1786.

(3) making decisions as to disbursement of funds and payment of creditors; and

(4) check-signing authority.

*Id.* at 178. While Mirelez did not have authority to sign CRP checks, he was a CRP officer who managed the daily financial affairs of the firm, including deciding how funds were spent and which creditors were paid.

In *Wood,* 808 F.2d at 415, we held that the chairman of the board of a corporation was a responsible person because he had a substantial financial interest in the corporation, took an active role in decisions made by the board of directors, had check-signing authority, and ran the daily operations of the corporation. We rejected the chairman's attempt to disqualify himself from responsible person status simply because he was not responsible for ensuring the payment of payroll taxes. *Id.* Similarly, we cannot allow Mirelez to disqualify himself from responsible status simply because he does not fit into every category we have ever listed.

In *Gustin,* 876 F.2d at 492, we held that a corporate officer who had actual authority to pay delinquent taxes, but chose instead to pay other creditors, was a responsible person. In *Howard,* 711 F.2d at 731, we found that a minority shareholder and executive vice president of a corporation was a responsible person because he had the responsibility for hiring and firing employees and determined which bills were to be paid. Likewise, in *Neckles v. United States,* 579 F.2d 938, 940 (5th Cir.1978), we decided that a *de facto* officer of a corporation, even though he received no salary and held no title, was a responsible person because he had the authority to pay creditors and did so, knowing that taxes were due the government. Having "significant control over disbursements" was sufficient for section 6672 liability to attach. *Id.* at 940. Mirelez also had the authority to pay creditors and chose to pay them instead of the government.

Distilling the key elements of "responsibility" from these cases, and applying them to the case at hand, we cannot say that the district court's decision was erroneous. Mirelez was an officer—Chief Financial Officer—of CRP during the contested quarters. He was responsible for the daily financial operations of the company. He was involved in preparing CRP's bills, deciding which bills to pay, and disbursing funds to pay them. He also took care of payroll taxes and prepared (and occasionally

signed) the payroll tax reporting forms. While Mirelez never had the authority to sign checks on his own, he did have a virtually free hand to disburse funds as he pleased because Raba and Cerna—those with the power to sign checks—rubber-stamped whatever Mirelez put in front of them. Mirelez had effective power to pay taxes.

Mirelez tries to relieve himself of liability through two arguments, neither of which relies upon Fifth Circuit jurisprudence. First, he cites a number of Claims Court and Seventh and Ninth Circuit cases as standing for the proposition that a court must look through the nominal functions of corporate officers to find the person or persons who have actual power to decide how funds are disbursed. Following this suggestion, we find that Mirelez had such authority.

For example, Mirelez relies upon *White v. United States,* 372 F.2d 513, 516, 178 Ct.Cl. 765 (1967), where the court said that the purpose of section 6672 is to find "where the ultimate authority for the decision not to pay the taxes lies." The court went on to decide that a chief executive officer who set prices, negotiated contracts, and paid creditors, was a responsible person. *Id.,* 372 F.2d at 519. The court, however, did note that more than one person may be a responsible person and suggested that a person in charge of disbursing funds, especially if he had authority to decide which creditors to pay, also could be a responsible person.

The reasoning in this line of cases does not provide much succor to Mirelez. Mirelez, as the most important financial officer of CRP, had the authority not to pay the delinquent taxes. At the very least, he could, and did, control which creditors were paid. So, even under *White,* Mirelez would be considered a responsible person.

Mirelez goes on to assert that *Godfrey v. United States,* 748 F.2d 1568 (Fed.Cir.1984), vindicates him as well. He notes that the court held that the unrenumerated chairman of the board of a corporation was not a responsible person. *Id.* at 1576. The court found that while the chairman had participated in hiring employees, approving settlements, and authorizing borrowing, he was not a responsible person because, among other things, he was not authorized to sign checks, did not participate in the daily financial management, and did not exercise control over the collection and payment of taxes. *Id.*

*Godfrey* is distinguishable from our case. Mirelez did participate in daily financial management. In fact, he controlled the day-to-day fiscal affairs of CRP. He also did participate in the preparation and payment of tax forms. No matter how hard Mirelez attempts to fit into *Godfrey* 's shoes, he cannot.

Mirelez's second argument is that he cannot be a responsible person because he did not meet any of the following five criteria: He claims that since he (1) did not have check-writing authority, (2) did not participate in the daily fiscal management of a corporation, (3) did not control the payroll, (4) did not determine which creditors would be paid, and (5) did not own a significant portion of a corporation's stock, he cannot be held a responsible person. If we apply Mirelez's own logic, and look beyond form to substance, we find that although Mirelez did not sign checks, he could simply present checks to Cerna or Raba for their uninquisitive signatures.

The district court found that Mirelez's authority was so absolute that Cerna and Raba never went against one of his decisions. In addition, while Mirelez might not have had formal, written authority to pay creditors, according to the district court he did have "authority to determine on a day-to-day basis which creditors of CRP were to be paid." Finally, Mirelez admits that he was the most important person directing the daily financial affairs of CRP. These facts indicate that Mirelez was far from "a simple bookkeeper of a closely held corporation, who neither signed nor had authority to sign checks...."

Mirelez finally would have us hold that the fact that he did not have check-signing authority is dispositive of whether he is a responsible person under the statute. We decline this invitation. To do differently would open the door to a host of evasive tactics. Officers with otherwise unfettered authority simply would deprive themselves of permission to sign corporate checks in order to avoid the designation of "responsible person."

Additionally, our cases have never held that check writing power is a prerequisite to responsible person status. In *Brown v. United States,* 464 F.2d 590, 591 (5th Cir.1972), *cert. denied,* 410 U.S. 908, 93 S.Ct. 962, 35 L.Ed.2d 270 (1973), we found liable under section 6672 a corporate officer who only had authority to co-sign checks. We stated that if we held "to the contrary—that

lack of individual authority to sign corporate checks insulated [a person] from liability—we would surely open the door to protective co-signing arrangements. The effect of such a holding would tend to emasculate section 6672." *Id.* We too refuse to do such harm to the statute.

The district court concluded that Mirelez was a responsible person. We agree. The record indicates strong support for this conclusion, based upon Mirelez's unhindered role in conducting the daily financial affairs of CRP during the periods in question.

B.

Section 6672 will impose liability on a responsible person only if the person "willfully" fails to collect, account for, or pay over withheld taxes. Willfulness does not require a showing of "bad motive or evil intent." *Mazo,* 591 F.2d at 1154. *See also Gustin,* 876 F.2d at 492; *Wood,* 808 F.2d at 415. Willfulness is normally proved by evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the government. *Morgan,* 937 F.2d at 285.

In *Morgan, id.* at 286, we held that a responsible corporate officer who wrote checks to himself and another creditor, despite knowledge that his company owed withholding taxes to the federal government, acted willfully. Similarly, in *Wood,* 808 F.2d at 416, we determined that a responsible person acted willfully when, after receiving notice that payroll taxes were past due, he paid creditors more than the amount of unpaid withholding taxes. Finally, in *Howard,* 711 F.2d at 736, we declared that "[a] considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness."

The district court found that Mirelez acted willfully by preferring himself to the IRS after he knew of the payroll tax delinquency. Once again, we agree with this conclusion, which is substantiated by record evidence.[6]

---

[6]The burden of proving lack of willfulness is on the taxpayer. *Mazo,* 591 F.2d at 1155. Mirelez has not successfully shown that his behavior was not willful. He relies upon several Court of Claims cases for the propositions that (1) willful does not mean with evil intent and (2) willful requires more than negligence. These propositions are not controversial. Mirelez claims that the position of the United States would hold him liable for willful failure to pay withholding taxes

The record shows that Mirelez knew of the payroll tax due the IRS by at least early 1986. During the end of 1985 and the beginning of 1986, he made large loans to CRP and was repaid during this same period. As the person preparing CRP's checks, awaiting the willing signatures of Raba and Cerna, Mirelez preferred himself over the IRS. Furthermore, Mirelez also misrepresented the withholding delinquency to Raba and Cerna and continued to appropriate, for his personal use, checks intended to be paid to the IRS during the period in question, thus additionally hindering CRP's efforts to repay the outstanding withholding tax. All of these activities support the finding that Mirelez willfully failed to pay over payroll taxes to the United States.

The judgment of the district court is AFFIRMED.

---

simply because he had knowledge of delinquency. Yet this is not the government's position. The government contends that Mirelez not only knew of the delinquency, but also proceeded to pay other creditors, namely himself. This payment of other creditors fulfills the willfulness requirement in this circuit.