**SCDF INVESTMENT CORPORATION, et al.**

v.

**UNITED STATES of America, et al.**

**Civ. A. No. 92–1211.**

United States District Court,
W.D. Louisiana,
Lafayette—Opelousas Division.

Jan. 20, 1995.

Allan L. Durand, Lafayette, LA, for plaintiff.

Henry C. Perret, Jr., Lafayette, LA, for third-party defendant.

Neal I. Fowler, Washington, DC, for U.S.

## OPINION

HAIK, District Judge.

This matter was tried before the Court as a bench trial on November 28, 1994. Present at trial were Allan L. Durand on behalf of the plaintiff, SCDF Investment Corporation ("SCDF")[1], Henry C. Perret, Jr. on behalf of third-party defendant, Bal–Chem Industrial and Sanitary Maintenance Corporation ("Bal–Chem")[2], and Neal I. Fowler on behalf the United States of America ("United States").

SCDF brought suit against the United States, asserting a claim for the refund of payments under § 6672(a) of the Internal Revenue Code (Title 26 U.S.C.).

## FACTS

The matter now before the Court stems from the relationship established between SCDF and Bal–Chem in 1988, which continued through 1991. SCDF was an institution which loaned money to small businesses. In 1988, SCDF made a term loan to Bal–Chem in the amount of $20,000.00. This loan was coupled with a $25,000.00 working capital line of credit which was subsequently increased to $55,000.00 in 1989. Throughout the duration of the relationship, Mouton existed as the person in charge of this account for SCDF.

SCDF maintained an office in Lafayette, Louisiana while Bal–Chem's administrative offices were in New Orleans, Louisiana. As Bal–Chem had previously established a relationship with Liberty Bank in New Orleans ("general account"), SCDF opened an account ("joint account") in the joint names of SCDF and Bal–Chem at Liberty Bank. Pertaining to the joint account, only the officers of SCDF had signature authority to write checks. Pertaining to the general account, SCDF had no capability, signatory or other-

---

1. When referring to the acts and trial testimony of SCDF, the Court may be required to reference the specific acts and trial testimony of SCDF's principal participants. The pertinent members of SCDF are: Marvin Beaulieu ("Beaulieu"), president; Martial Mirabeau ("Mirabeau"), vice-president; and, Sylvia Mouton ("Mouton"), treasurer.

2. When referring to Bal–Chem, the Court may be required to refer to the specific acts and trial testimony of Bal–Chem's principal participants. These participants are Carl Baloney ("Baloney"), president of Bal–Chem, and Geraldine Baloney Infante ("Infante"), vice-president of Bal–Chem. Together, Baloney and Infante founded Bal–Chem, were the sole shareholders and operators of Bal–Chem, and had formal control over all decisions of Bal–Chem.

wise, to control the subsequent use of funds placed into the general account. Baloney testified that during the first three months of 1989, the general account received $80,000.00 in deposits from the joint account. Baloney could not explain why none of this money had been exhausted to reduce the outstanding payroll taxes.

Based upon the loan agreement, the parties assigned Bal–Chem's accounts receivable to SCDF; however, at trial, the exact date of this assignment stood in conflict. What is undisputed, is that in an April 17, 1989 correspondence from SCDF, Bal–Chem (through Baloney, as President) was informed of, agreed to and accepted, the terms and conditions of the loan.

The United States contends that the purpose of the joint account was to provide SCDF with significant control over Bal–Chem funds in order to insure that loan and interest payments were made to SCDF. After payments were made to SCDF, the remaining funds were to be disbursed to Bal–Chem. The United States then asserts SCDF made payments directly from the joint account to creditors of Bal–Chem and to Baloney and Infante. Thus, the United States urges SCDF conditioned the release of funds to Bal–Chem upon the agreement that the funds would be used to pay certain liabilities as directed by SCDF. Therefore, the United States contends that SCDF not only carried out their initial plan for repayment of the loan installments, but increased their sphere of influence by regulating the allocation of funds subsequent to the their being placed in Bal–Chem's general account.

Mouton testified that Bal–Chem would request disbursements from the credit line predominantly over the telephone. Mouton also testified that, occasionally, Bal–Chem would make the borrowing requests by mail or facsimile. However, as per the contract, SCDF was not required to approve the purported business purpose; SCDF merely required Bal–Chem to substantiate the requests to a business purpose. Therefore, the business judgment as it related to spending the money was reserved solely to Bal–Chem.

Mouton then testified that when possible, based upon available funds, the full amount of the request was provided. However, when insufficient funds existed, Mouton advised Bal–Chem of the limited nature of the funds, and charged Baloney and/or Infante with the responsibility of making a determination as to how the money would be allocated. The Court found Mouton's testimony to be highly credible and untainted by personal interest in the outcome of this case.

This testimony was challenged by Baloney and Infante as they testified that Mouton mandated to whom Bal–Chem could and could not pay; both Baloney and Infante testified this was the procedure imposed by SCDF throughout the duration of the relationship. However, neither Baloney or Infante could provide the Court with any documentation of this alleged directive, save SCDF's periodic extraction of funds for the re-payment of the loan through the joint account from the incoming accounts receivable. The Court found the testimony of both Baloney and Infante to be colored by personal interest in the outcome of the instant suit; thus, their testimony was somewhat less credible than that of Mouton.

Both Baloney and Infante were aware of Bal–Chem's failure to deposit the employment withholding taxes during the periods at issue. SCDF was aware of the problem in October, 1988 and inquired about the situation in December, 1988. Infante specifically requested SCDF to provide funds for the delinquent taxes on October 4, 1989. SCDF discussed the delinquent taxes of Bal–Chem during their Finance Committee meeting on or about July 23, 1990. SCDF again was made aware of the problem on or about December 7, 1990 as Mouton reported Bal–Chem had a serious payroll tax problem which "they will not address with IRS (Internal Revenue Service)." A payment of $10,000.00 was made, but Mouton was "sure it had been absorbed by penalty and interest." Thus, the United States contends that during the period in question: (1) SCDF was aware of Bal–Chem's failure to make payroll tax deposits; (2) took no steps to insure that the payments were made; and (3) continued to direct funds from the joint account to pay SCDF and channelled funds to Bal–Chem,

Baloney, and Infante for the payment of other creditors.

On November 11, 1991, a duly authorized delegate of the Secretary of the Treasury made an assessment of a 100% penalty pursuant to § 6672(a) of the Internal Revenue Code (Title 26 U.S.C.) against SCDF, Mouton, Beaulieu, Baloney and Infante for the failure to pay taxes withheld from the wages of Bal–Chem employees for the year 1989 and the first three quarters of 1990 in the amount of $32,398.81. (An assessment was also made against Mirabeau on December 9, 1991.) Based upon an initial failure to pay this amount by the third-party defendants (Baloney and Infante), SCDF paid the amount of $33,300.99 against the tax assessments at issue. They then filed a timely claim for refund. This claim was denied. The Plaintiffs subsequently filed this lawsuit in hopes to have this assessment refunded.

## CONTROLLING LAW

The Court has determined the crucial inquiry to be addressed is whether SCDF was sufficiently involved in the financial decision-making of Bal–Chem to warrant the United States' assignment to SCDF of "responsible party" status pertaining to the payment of Bal–Chem's outstanding employee payroll taxes.

The United States Fifth Circuit has addressed the issue of "responsible person" status as it pertains to § 6672 on several occasions, and recently outlined the analysis required for such a situation. *Barnett v. Internal Revenue Service*, 988 F.2d 1449 (5th Cir.1993) (*en banc*). The findings in *Barnett* are the culmination of several decades of progressive interpretation of § 6672; thus, the analysis utilized in the *Barnett* decision shall be employed by the Court in the instant case. *See Barnett.*

The Internal Revenue Code requires employers to withhold from employees' wages federal income taxes and social security contributions. *Id.* at 1453; citing 26 U.S.C. §§ 3102 and 3402. The employer holds these funds "in trust" for the United States. *Id.;* citing 26 U.S.C. § 7501(a). When a corporation fails to pay over the trust funds, § 6672(a) of the Code imposes a penalty equal to the entire amount of the unpaid

taxes on "any person" required to collect, account for, or pay over the withheld taxes, who "willfully" fails to do so. *Id.* Liability for the penalty is established if a person is a "responsible person" who "willfully" failed to pay over the withheld taxes. *Id.;* citing *Turnbull v. United States,* 929 F.2d 173, 178 (5th Cir.1991). In § 6672(a) cases, once the Government offers an assessment into evidence, the burden of proof is on the taxpayer to disprove his responsible-person status or willfulness. *Id.; see Morgan v. United States,* 937 F.2d 281, 285 (5th Cir.1991).

Bal–Chem was required to withhold employee payroll taxes in trust for the Government. Bal–Chem failed to turn the tax funds over to the IRS. The United States now seeks SCDF as the "responsible person" to provide the monies owed by Bal–Chem. The United States has offered proof to the Court of the assessment upon SCDF as a "responsible person"; thus, the burden has shifted to SCDF to disprove this responsibility or willfulness. *See Id.*

Accordingly, the Court is faced with the watershed inquiry of whether SCDF was a "responsible person" who "willfully" failed to pay withholding taxes according to *Barnett.* In order for the Court to make such a determination, it is first necessary to define "responsible person" and "willful" as the terms are defined in *Barnett.*

### Was SCDF a "Responsible Person"?

■ The Fifth Circuit has taken a liberal view of § 6672(a) to permit the United States to reach those persons responsible for a corporation's failure to collect, account for or pay over a federal payroll withholding or "trust fund" taxes. *Wood v. United States,* 808 F.2d 411, 415 (5th Cir.1991). Although the Fifth Circuit has traditionally treated the issue of whether one is a "responsible person" under § 6672 as essentially a question for the fact-finder, the Circuit in *Barnett* shifted its focus on the issue to a mixed question of law and fact in view of certain recurring fact patterns that require a finding of responsibility "as a matter of law." *Id.* at 1454. Thus, although "the facts ... are critical in ... any § 6672 cases," *Commonwealth National Bank of Dallas v. United States,*

665 F.2d at 752, we tend to agree with the other circuits that have held that certain facts will almost invariably prove dispositive of a finding of responsibility. *Id.* Consequently, the Court is faced with a determination based both in law and in fact.

Responsibility is simply a threshold question under § 6672: it is determined by looking to one's status within a corporation—that is, one's duty and authority to withhold and pay taxes. *Id.* The statute expressly applies to "any" responsible persons, not just to the person most responsible for the payment of the taxes. *Id.* at 1455; citing *Howard v. United States*, 711 F.2d 729, 733 (5th Cir.1983). The crucial inquiry is whether a party (SCDF) could have had "substantial" input into such decisions, had he wished to exert his authority. *Id.; see Raba v. United States*, 977 F.2d 941, 943 (5th Cir.1992). The Court found that SCDF's loaning of money and the assignment of Bal–Chem's accounts receivables, coupled with SCDF's inability to regulate the allocation of Bal–Chem's funds subsequent to repayment of loan installments, is insufficient to establish "substantial" input into Bal–Chem's use of funds. Based upon the documentation provided and the testimony given, the Court finds that the actions of SCDF did not merit responsibility for the payment of overdue taxes.

The Fifth Circuit has provided the District Courts with a six factor test in order to determine whether a party has exercised indicia of such an authoritative position. The Court is required to ask whether such a person: (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment to creditors; and (vi) possesses the authority to sign company checks. *Id.; see Raba*, 977 F.2d at 941; *Turnbull*, 929 F.2d at 178; *Gustin v. United States*, 876 F.2d 485, 492 (5th Cir.

1989); *Howard*, 711 F.2d at 734. It is extremely important to note the Circuit then specifically recognized that *no single factor is dispositive. Id.; see Raba*, 977 F.2d at 945 (emphasis included). Therefore, bearing in mind no single factor is dispositive, the Court must determine whether the actions of SCDF merit inclusion into any of the six factor categories which are indicia of authority and, subsequently, merit "responsible person" status. For purposes of efficiency, factors (i)–(iv) will not be addressed as the Court finds SCDF's actions clearly do not incorporate these areas of concern. Rather, the Court will focus its discussion on factors (v) and (vi).

The Court must initially determine whether SCDF had the authority to make decisions as to the disbursement of funds and payment of creditors. The Court recognizes the Fifth Circuit's observance that cases not finding § 6672 responsibility are relatively few and far between. *Barnett v. Internal Revenue Service*, 988 F.2d 1449, 1456 (5th Cir.1993) (*en banc*). However, in searching to properly define the boundaries of § 6672 responsibility, the Circuit has acknowledged the existence of several exceptional situations which merit relief to the party assessed with the "responsible person" status. *Id.* at 1456.

Analogous to the instant case was an acknowledged exception where a bank that loaned money to a company that failed to pay withholding taxes was not a "responsible party" because the bank had no control over the corporation's finances. *Id.;* citing *United States v. Hill*, 368 F.2d 617, 622–24 (5th Cir.1966). Although the Fifth Circuit has repeatedly recognized that lending institutions can be held accountable[3], the behavior of the participants as representatives of the institution, and not the mere nature of the parties or the nature of the relationship itself, vaulted the institution into the "responsible person" category. The Fifth Circuit does not attach "responsible person" status to a lending institution *per se.* The facts of each instance must be individually analyzed

---

**3.** It is well established that a bank, creditor, or employee of a bank or creditor, can be a "responsible person" within the broad definition of § 6672. *Commonwealth National Bank of Dallas v. United States*, 665 F.2d 743, 757 (5th Cir.

1982); *Liddon v. United States*, 448 F.2d 509 (5th Cir.1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *see Merchants National Bank of Mobile v. United States*, 878 F.2d 1382, 1386 (11th Cir.1989).

in order to determine the particular degree of authority exercised. "Responsible person" status is then affixed to only those parties who involve themselves to such a degree of control as to merit such an imposition.

The Court found the testimony of Mouton to be extremely credible in regards to SCDF's dealings with Bal–Chem. To the contrary, the Court found the testimony of Baloney and Infante to be colored by the reality of their situation. As a result, the Court gave great judicial weight to the testimony of Mouton, while questioning the motivation of the Bal–Chem representatives. This testimony was then supplemented by an abundance of documentation which proved nothing more than the fact that SCDF was a lender concerned with the repayment of an outstanding loan. The Court finds these facts do not merit the encumbrance of the "responsible person" status.

■ The Court concludes that the limited involvement of SCDF warrants the exceptional treatment afforded in *Hill.* The Court will not assign SCDF with "responsible person" status merely because SCDF loaned money to Bal–Chem and subsequently advanced Bal–Chem a line of credit. The fact that a lender makes loans to a corporate employer that is failing to pay over withheld federal income employment taxes to the United States will not, without more, subject the lender to liability under § 6672. *Commonwealth National Bank of Dallas v. United States,* 665 F.2d 743 (5th Cir.1982). The fact that Bal–Chem's janitorial accounts receivables were assigned to SCDF and SCDF's display of concern for Bal–Chem's tax problem merely demonstrate to the Court a desire on the part of SCDF to protect its investment. This self-defensive conduct, however, does not justify the Government's desire to impose "responsible person" status upon SCDF. The Court could find no evidence to indicate that SCDF had authority or control over the subsequent allocation of incoming funds from the joint account to which Baloney testified. The Court does not find SCDF had the requisite authority to make decisions as to the disbursements of funds and payment of creditors as required by *Barnett. See Barnett v. Internal*

*Revenue Service,* 988 F.2d 1449, 1455 (5th Cir.1993) (*en banc*). Rather, the Court finds that based upon the overall viewing of the facts, in conjunction with the application of current law, SCDF should not be held responsible for the delinquent conduct of Bal–Chem.

In line with the Court's findings, the Fifth Circuit has concluded that the determination of who is a responsible person is not a matter to be determined either in a partial vacuum, filled only with legal theory, or solely on the basis of the paper relationships between parties. *See First National Bank in Palm Beach v. United States,* 591 F.2d 1143, 1149 (5th Cir.1979). We are concerned with actual control and economic reality, not paper facades. *Id.* The Court exacted a corresponding evaluation upon the unique factual scenario found in this case. The Court looked to the actual supervision applied by SCDF versus the supposed level of control portrayed at trial by the United States, Baloney and Infante.

■ The Court must then ascertain whether SCDF possessed the authority to sign company checks. *Id.* at 1455. This authority has not been contested. The Court finds, however, that the Fifth Circuit stated *no single factor is dispositive. Id.* (emphasis added). The joint account was used to: (a) collect accounts receivable; (b) make periodic payments to SCDF on the loan; and (c) forward the balance to Bal–Chem for its daily operations. Further, the Court found that the fact that SCDF had this authority on the joint account, and not on Bal–Chem's general account, indicated SCDF's desire to remain remote and neutral from the control of Bal–Chem's operations and financial allocations, subsequent to SCDF's appropriation for loan and interest payments. As this check writing authority is the exclusive element which elevates SCDF into the "factor test" umbrella, the Court concludes that SCDF's governance of this single area of authority is insufficient to be the catalyst to brand SCDF with "responsible person" status.

■ The Court would also like to address the issue of SCDF's recognition of Bal–

Chem's tax problem. Because SCDF was not a "responsible person" for purposes of § 6672, it was under no duty to apply any available unencumbered funds to reduce Bal–Chem's payroll tax liability after learning that Bal–Chem had not paid the payroll taxes. *Turnbull v. United States*, 929 F.2d 173, 180 (5th Cir.1991); *but cf. Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir.1979) (finding that duty to apply any unencumbered funds to reduce the payroll tax liability existed where *responsible person* was found to have acted willfully) (emphasis added). Therefore, although SCDF knew of Bal–Chem's delinquencies, SCDF is under no duty to apply its own available funds to reduce Bal–Chem's outstanding liabilities as SCDF was not a responsible person.

### Did SCDF act "willfully"?

Based upon the aforementioned finding that SCDF was not a "responsible person" for purposes of § 6672(a), the Court finds it unnecessary to discuss whether SCDF was "willful" in their actions pursuant to *Barnett* for purposes of § 6672(a). *See Barnett v. Internal Revenue Service*, 988 F.2d 1449 (5th Cir.1993) (*en banc*).

### CONCLUSION

Based upon a thorough review of the trial testimony, arguments, briefs and records, it is the finding of this Court that SCDF should hereby be awarded $33,300.99, the full amount of the requested refund, as well as all reasonable costs and fees associated with the prosecution of this lawsuit. The Court will sign a formal judgment upon presentation.

The Court can find no reason to deny prejudgment interest in this case and directs that the award will bear interest from the date of judicial demand until paid.

THUS DONE AND SIGNED.