Grant SUTTON Plaintiff

v.

UNITED STATES of America
Defendant

No. CIV.A. 1:00–CV–682.

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 5, 2001.

Charles Gordon Reed, Beaumont, TX, for Plaintiff.

David Brandon Coffin, Department of Justice, Tax Division, Dallas, TX, for Defendant.

## MEMORANDUM and ORDER

COBB, District Judge.

Before the court is Defendant's Motion for Summary Judgment [Dkt.# 11] and Plaintiff's Motion for Summary Judgment [Dkt.# 12], and the court having reviewed the motions and responses on file is of the opinion that the Defendant's motion be GRANTED and Plaintiff's motion be DENIED.

Grant Sutton ("Sutton") filed this suit in federal court on October 10, 2000, seeking recovery of the I.R.S. employment and withholding taxes he claims were illegally and erroneously assessed against him. The defendant, the United States, answered and counterclaimed seeking a dismissal of Sutton's claims and a finding on its counterclaim that Sutton is liable for the amounts assessed. The U.S. filed its motion for summary judgment on August 14, 2001, arguing that a portion of Sutton's claims were foreclosed by the statute of limitations[1] and that Sutton is liable, as a matter of law, under 26 U.S.C. § 6672. Sutton filed a response to the U.S.'s motion and filed his own motion for summary judgment on September 19, 2001, arguing that he was not a responsible person who willfully failed to collect, account for, or pay over the trust fund monies. Sutton asserts that he cannot be held liable as a responsible person because he needed Mr. J. Peters' ("Peters"), the majority shareholder's, authorization before any of the company's bills could be paid and because Peters told Sutton that he would take care of paying the government.

## I. Background

The undisputed evidence submitted with the parties' motions for summary judgment shows: In 1969, Sutton co-founded American Hoses Specialty, which later became Source One Supply Company ("Source One"), when in 1989, the majority owner of American Hose sold his 51% interest to Peters. Around 1976, Sutton became the company's president and held this position until the company closed its doors in 1993. Since the mid–1970s, Sutton owned 25% of the company's stock. He ran the day-to-day operations of the company. Sutton had primary responsibility for dealing with the suppliers and for the operation of the Source One business.

Sutton reviewed the company's financial statements and tax returns, attended board meetings, and discussed with Peters which creditors needed to be paid. He signed at least one employee quarterly tax return during the period where the trust fund monies were not being paid. Sutton had authority to sign checks for the company and did in fact sign the majority of Source One's checks. He also approved the check signing of the only other Source One employee with check signing authority, the company's secretary, Kathy Washenfelder.

In 1991, Source One began to experience cash flow problems. Around this time, Sutton stopped taking a paycheck from the company because it did not have enough money. From 1989 until about the middle of 1992, Peters and Sutton spent an equal amount of time at the company's main office, but starting in the middle of 1992, Peters began leaving town frequently to work on other business ventures. Sutton continued running the day-to-day operations of Source One and paying employees and creditors until the beginning of 1993 when the company closed its doors for good.

During the time that it was experiencing cash flow problems, Source One failed to make sufficient federal payroll tax deposits such that when the company filed its payroll tax returns for the quarters ending June 30, 1992, September 30, 1992, December 31, 1992 and March 31, 1993, the following taxes were due and unpaid:

| | |
|---|---|
| June 30, 1992 | $14,458.93 |
| September 30, 1992 | $ 3,699.03 |
| December 30, 1992 | $ 6,536.94 |
| March 31, 1993 | $ 1,654.91 |

On March 7, 1994, the I.R.S. personally assessed Sutton a trust fund recovery tax at the 100% penalty rate of $14,589.17 for

---

1. Because the court's ruling in this memorandum opinion makes it a moot issue, the court declines to address the government's statute of limitations argument.

what the I.R.S. contends was his willful failure to pay the employee tax withholdings held in trust by Source One over to the U.S. while he was president of the company. A subsequent I.R.S. review abated the assessment by $4,794.74, leaving the amount of $9,794.42 of which $7,941.76 is still outstanding. Sutton paid $100 to the I.R.S. on October 1, 1999, representing employment and withholding taxes for one employee for one quarter and immediately filed for a refund of the money, enabling him to invoke federal court jurisdiction. The I.R.S. disallowed Sutton's refund on June 8, 2000. This suit followed.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows a court to grant summary judgment on issues presenting no genuine issue of material fact. Summary judgment is proper when the movant is able to demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. It is unnecessary for the movant to negate elements of the non-movant's case. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Once the material facts are assessed, the court must determine whether the evidence reveals the presence of genuine factual issues. A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir.1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate. *Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 777 (5th Cir.1997). In doing so, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Id.* (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).

## III. Section 6672 Liability

■ The relevant law regarding liability under 26 U.S.C. § 6672 for unpaid employment taxes is familiar and need not be recounted at length. Federal law requires that employers withhold from their employees' paychecks their shares of federal social security taxes and income taxes. *Barnett v. I.R.S.,* 988 F.2d 1449, 1453 (5th Cir.1993) (citing 26 U.S.C. §§ 3102 and 3402). The employer holds the withheld taxes 'in trust' for the United States and must pay them over to the government. *Id.; Wood v. United States,* 808 F.2d 411, 414 (5th Cir.1987). If an employer with-

holds the taxes from its employees but fails to remit them, the government must nevertheless credit the employees for having paid the taxes and seek the unpaid funds from the employer. Section 6672(a) imposes liability for these delinquent taxes not only on the corporate employer but on any person, including a corporate officer or employee, who is required to collect, truthfully account for, or pay over any tax—commonly referred to as "responsible persons" [2]—who willfully fails to do so. *Barnett*, 988 F.2d at 1453. This penalty is "separate and distinct from the liability imposed on the employer to remit the trust fund taxes." *Stallard v. United States*, 12 F.3d 489, 493 (5th Cir.1994) (*per curiam*) (footnote omitted). Section 6672 provides the government recourse for collection of the taxes by allowing it to reach the persons responsible for causing the company's failure to pay the taxes. *Newsome v. United States*, 431 F.2d 742, 745 (5th Cir.1970). This "serves a valuable prophylactic purpose: it encourages officers, directors, and other high-level employees to stay abreast of the company's withholding and payment of employee's taxes." *Barnett*, 988 F.2d at 1457.

 To establish liability against Sutton, the government must demonstrate that (1) he is a responsible person (2) who willfully failed to pay over the taxes. *Barnett*, 988 F.2d at 1453. Once the government offers a § 6672 assessment into evidence, the taxpayer bears the burden of disproving his responsible person status or willfulness. *Id.* Sutton, as the plaintiff who seeks a refund of a partial payment of a § 6672 penalty, has the burden of proving that he is not a responsible person, even where, as here, the government has counterclaimed for the remainder of the tax. *Morgan v. United States*, 937 F.2d

281, 285 (5th Cir.1991) (*per curiam*) (citing *Liddon v. United States*, 448 F.2d 509, 513–14 (5th Cir.1971)).

Because the United States has introduced a certificate of assessment into evidence, the burden has shifted to Sutton to prove either that he is not a responsible person or that he did not act willfully. At the summary judgment stage, however, he need only adduce evidence that creates a genuine issue of material fact.

## A. Sutton's Responsible Person Status

 The Fifth Circuit takes a broad view as to who qualifies as a responsible person. *Logal v. United States*, 195 F.3d 229, 232 (5th Cir.1999); *Barnett*, 988 F.2d at 1454. Whether someone is a responsible person "turns on his status, duty, and authority." *Turnbull v. United States*, 929 F.2d 173, 178 (5th Cir.1991). "The critical inquiry is whether a party . . . by virtue of his position in (vis-a-vis) the company, could have had 'substantial' input into such decisions had he wished to exert his authority." *Barnett*, 988 F.2d at 1455. The Fifth Circuit has also stated that "[t]he central question is whether the individual had the effective power to pay the taxes." *Gustin v. United States*, 876 F.2d 485, 491 (5th Cir.1989). One does not cease to be a responsible person merely by delegating responsibility to others, nor do instructions from a superior not to pay the taxes negate one's responsible person status. *Id.*; *Howard v. United States*, 711 F.2d 729, 734 (5th Cir.1983). Furthermore, any particular company is likely to have multiple responsible persons. *Barnett*, 988 F.2d at 1455. Section 6672 applies to "any" responsible person, not just to the most responsible person. *Id.*

---

**2.** A person facing liability under § 6672 is generally referred to by the phrase "responsible person." *Slodov v. United States*, 436 U.S. 238, 246 n. 7, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

The Fifth Circuit has set out a list of factors for courts to consider as indicia of responsible person status. In deciding a party's responsible person status, a district court should ask whether the person:

1. is an officer or member of the board of directors;
2. owns a substantial amount of stock in the company;
3. manages the day-to-day operations of the company;
4. has the authority to hire or fire employees;
5. makes decisions as to the disbursement of funds and payment of creditors; and
6. possesses the authority to sign company checks

*Id.; Logal*, 195 F.3d at 232.

Sutton meets most of the factors outlined by the Fifth Circuit as indicia of a responsible person. He held the position of president of the company and attended its board meetings. He owned 25% of its stock. He managed its day-to-day operation. Neither party presented evidence as to his authority to hire or fire employees, but he was generally responsible for the operations of the company. Sutton contends that he had no authority to unilaterally pay creditors, but he did discuss with Peters which creditors needed to be paid. Finally, Sutton possessed the authority to sign checks for the company and he signed the majority of Source One's checks. Further, he approved the check signing of the only other Source One employee with check signing authority.

The facts of this case combined with the Fifth Circuit's indicia of reasonable person status strongly support a finding that Sutton qualifies as a responsible person. Sutton attempts to counter these facts and create a genuine issue of material fact by arguing that he did not have effective control to disburse funds because he needed

Peters' authorization before he could pay creditors. Sutton argues that requiring him to pay the Internal Revenue Service without having Peters' prior approval would be akin to stealing from the company.

The Fifth Circuit in *Howard v. United States*, 711 F.2d 729 (5th Cir.1983) addressed a similar claim by a taxpayer. In this case, Waymon Leon Howard appealed the district court's grant of summary judgment to the United States finding him personally liable under § 6672 as a responsible person. Howard was an officer and a minority shareholder of Eden Marketing Corporation. He ran the day-to-day operations of the company and was the sole signatory on the company's main checking account for a substantial portion of the relevant time period. In this case, Mr. Jennings, the majority shareholder of the company, *specifically ordered* Howard not to pay the I.R.S. *Id.* at 731.

The Fifth Circuit affirmed the district court's decision, stating: "The fact that Jennings might well have fired Howard had he disobeyed Jennings' instructions and paid the taxes does not make Howard any less responsible for their payment." *Id.* at 734. The appellate court concluded that Howard had the status, duty, and authority to pay the taxes owed. *Id.* The court appreciated the difficult position Howard had been placed in, but stated that it could not "condone his abdication of the responsibility imposed upon him by law." *Id.*

Sutton claims to not have had effective power because he needed Peters' prior approval, but this argument seems unavailing because the Fifth Circuit found Howard to be a responsible person and Howard had his superior's *express disapproval.* The mere fact that Sutton did not possess the final word as to which creditors would receive payment does not nullify his re-

sponsible person status. *See id.* at 734 (holding liable a corporate officer who was ordered by his superior not to pay the taxes); *Moore v. United States,* 465 F.2d 514, 517 (5th Cir.1972) (finding that corporate officers who merely followed their supervisor's instructions in issuing checks to creditors were nevertheless responsible persons); *Brown v. United States,* 464 F.2d 590, 591 n. 1 (5th Cir.1972) (stating that a corporate officer need not have the final word as to what checks are prepared to be held a responsible person). Responsible person status depends upon a party's position, duty, and authority within a company. *Turnbull,* 929 F.2d at 178. Sutton's position, duty, and authority within Source One allowed him substantial input into the decision of whether to pay the required taxes.

Furthermore, Sutton possessed the ability to refuse to sign checks paying creditors other than the United States unless and until the taxes were paid over to the government. This action may have placed him in a precarious position, but as president, shareholder, and person in charge of the day-to-day operations of the company, he was under a duty to refrain from favoring other creditors over the United States. *Howard,* 711 F.2d at 734. Sutton's position within the company allowed him a substantial opportunity to insure Source One complied with its tax obligations, but Sutton failed to utilize this opportunity.

 Sutton further argues that he is not a responsible because Peters, the company's majority shareholder, was a more responsible person for Source One's tax liabilities. There may have been others at Source One who could be deemed responsible persons and Peters may, in fact, have been more responsible than Sutton, but this does not negate Sutton's status. As stated above, section 6672 applies to "any" responsible persons, not just to the person *most* responsible for the payment of the taxes. *Barnett,* 988 F.2d at 1455. "There may be—indeed, there usually are—multiple responsible persons in any company." *Id.* Furthermore, the I.R.S. has no duty to pursue every person with responsibility for paying the trust fund taxes. *Howard,* 711 F.2d at 735. As such, this court finds that Grant Sutton meets the Fifth Circuit's test for responsible person status.

## B. Sutton's Willfulness

 While the Fifth Circuit takes a broad view of responsible person status, the Circuit uses the willfulness requirement as the "sifter" in most § 6672(a) cases. *Barnett,* 988 F.2d at 1457. For purposes of § 6672, willfulness does not require a bad motive or evil intent, but rather only a voluntary, conscious, and intentional act. *Id.* Willfulness may be proven in either of two ways: (1) "Willfulness is normally proved by evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the United States," *Id.* or (2) by showing that a responsible person "recklessly disregard[ed] the risk that the taxes may not be remitted to the government." *Logal,* 195 F.3d at 232.

The undisputed facts establish Sutton's willfulness under both tests. In his brief in support of his motion for summary judgment and in opposition to the United States of America's motion for summary judgment, Sutton admits that he was aware that the payroll taxes were not being paid, but states that he was told by Peters that he would take care of it. Nevertheless, his deposition testimony shows that he continued to pay employees and creditors up·until about the time the doors of the company were locked in 1993. The fact that he admits he was aware the withholding taxes had not been paid and he continued to pay creditors satisfies the first willfulness test. The fact that Sutton

was president of the company, ran the day-to-day operations of the company, and reviewed its financial statements, but merely relied upon Peters' continual assurances to pay the taxes in the face of Peters' continual failure to do so, satisfies the reckless disregard test for willfulness.

■ As a responsible person, Sutton had a choice. Sutton could have paid the taxes and/or refused to pay any other creditors until the United States received the money owed it and then accepted the professional consequences of such an action, and thereby avoided the penalty. But instead, Sutton chose to turn a blind-eye to his tax responsibilities; he must now face the legal consequences of his choice and pay the penalty. Section 6672 attempts to keep officers, directors, and other high-ranking employees from turning a blind-eye to their payroll tax responsibilities and to punish those that do. *Barnett*, 988 F.2d at 1457.

### IV. Conclusion

In sum, this court concludes that the undisputed evidence establishes, as a matter of law, that Sutton was a responsible person who willfully failed to pay over withholding taxes. It is, therefore,

ORDERED, that Defendant's Motion for Summary Judgment is hereby GRANTED.

It is further

ORDERED that Plaintiff's Motion for Summary Judgment is hereby DENIED. This court enters final judgment in favor of the United States of America and orders Grant Sutton to pay the remaining amount of the trust fund recovery penalty of $7,941.76, plus interest and statutory additions as allowable by law.